**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **LEXINGTON INSURANCE COMPANY;** | ) | |
| **GAVILON FERTILIZER, LLC; CERTAIN** | ) | |
| **UNDERWRITERS AT LLOYD'S OF** | ) | |
| **LONDON; and GAVILON GRAIN, LLC,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 14-CV-0610-CVE-TLW** |
| | ) | |
| **NEWBERN FABRICATING, INC., and** | ) | |
| **BAUCOM CONCRETE CONSTRUCTION,** | ) | |
| **INC.,** | ) | |
| | ) | |
| **Defendants,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **NEWBERN FABRICATING, INC.,** | ) | |
| | ) | |
| **Third-Party Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **DOVELAND ENGINEERING CO.,** | ) | |
| | ) | |
| **Third-Party Defendant** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **BAUCOM CONCRETE CONSTRUCTION,** | ) | |
| **INC.,** | ) | |
| | ) | |
| **Third-Party Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **COMMERCIAL METALS COMPANY,** | ) | |
| | ) | |
| **Third-Party Defendant.** | ) | |

## OPINION AND ORDER

Now before the Court is Defendant Newbern Fabricating Inc.'s Motion for Summary Judgment and Brief in Support (Dkt. # 100) and Newbern Fabricating Inc's Motion to Strike Affidavit of Brian Carleton (Dkt. # 110).[1]  Newbern asserts that it is entitled to summary judgment on plaintiffs' claims, arguing that plaintiffs' breach of contract claim is time barred, that plaintiffs' tort claim is not recoverable, and that the subrogated insurer plaintiffs cannot recover against Newbern in the absence of a cognizable claim.  Dkt. # 100, at 8.  Plaintiffs Gavilon Grain, LLC and Gavilon Fertilizer, LLC respond that none of the claims is barred and that the subrogated insurers have a right to recovery.  Dkt. # 107.  Plaintiffs Lexington Insurance Company and Lloyd's of London join in that response.  Dkt. # 108.  Defendant Newbern also seeks to strike the affidavit of Brian Carleton, Vice President of Operations for Gavilon Grain, submitted as an exhibit to the response to Newbern's motion (Dkt. # 107-1), arguing that plaintiffs use this affidavit to create a sham factual dispute and asserting that its contents are inconsistent with previous pleadings and discovery responses.  Dkt. # 110, at 2.  Plaintiffs respond that the affidavit should not be stricken, because it is consistent with the allegations in previous pleadings and discovery responses and does no more than provide clarification.  Dkt. # 119.

---

[1]     The Court notes that several other motions are pending, including Third-Party Defendant Doveland Engineering Co.'s Motion for Summary Judgment and Brief in Support (Dkt. # 167), Third-Party Defendant Commercial Metals Company's Motion for Summary Judgment and Brief in Support (Dkt. # 183), and Defendant Baucom Concrete Construction, Inc.'s Motion for Partial Summary Judgment (Dkt. # 198).  This opinion and order addresses only Newbern's motion for summary judgment and motion to strike.

**I.**

 This action arises from the collapse of a wall of a storage facility at the Tulsa Port of Catoosa on March 7, 2013.  Plaintiff Gavilon Grain owned the building, which Gavilon Fertilizer used to store fertilizer.[2]  Dkt. # 100, at 11; Dkt. # 107, at 4.  In 2004, Gavilon Grain contracted with defendant Newbern, a construction company that builds river terminals and equipment, to build a concrete storage building.  Dkt. # 100, at 10; Dkt. # 107, at 3.  Construction on the concrete portion of the structure was substantially completed by August 12, 2005.  Dkt. # 100, at 10; Dkt. # 107, at 3.  The remainder of the building and associated equipment was substantially complete by late 2005 or early 2006.  Dkt. # 100, at 10; Dkt. # 107, at 3.  The building was operational in early 2006.  Dkt. # 100, at 10; Dkt. # 107, at 3.

On March 7, 2013, a concrete wall of the building collapsed, resulting in damage to the wall itself and the master control center (MCC Room), an adjacent room that housed controls, motors, and electronics that controlled the building's conveyer system.  Dkt. # 100, at 12; Dkt. # 107, at 4.  Plaintiffs Lexington and Lloyd's of London paid a number of claims related to the losses sustained from the wall collapse.  Dkt. # 100, at 12; Dkt. # 107, at 5.  Plaintiffs Gavilon Grain and Gavilon Fertilizer both suffered losses from the wall collapse, including damage to the building and associated equipment and loss of profit and use of facilities.  Plaintiffs thereafter filed this action against defendants Newbern and Baucom Concrete Construction, Inc., asserting that the damages

---

[2]     In 2011, Gavilon Grain merged with DeBruce Grain, the party that contracted for and oversaw the construction of the storage facility.  Dkt. # 100, at 11; Dkt. # 107, at 4.  For clarity's sake, the Court refers to both entities as Gavilon Grain.  Also in 2011, Gavilon Fertilizer merged with DeBruce Fertilizer.  Dkt. # 100, at 11; Dkt. # 107, at 4.  The Court refers to Gavlion Fertilizer as representative of both entities.  When referencing Gavilon Grain and Gavilon Fertilizer together, the Court uses the Gavilon plaintiffs.

were caused by inadequate design and installation of the concrete columns.  Dkt. # 54.  Plaintiffs assert breach of contract and negligence claims against Newbern, seeking damages not recovered from the insurer plaintiffs.  Id.  The insurer plaintiffs seek recovery of insurance payments made to and on behalf of the Gavilon plaintiffs.  Id.  Newbern now moves for summary judgment.

## II.

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993).  The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317.  "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'"  Id. at 327 (quoting FED. R. CIV. P. 1).

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably

find for the plaintiff." <u>Anderson</u>, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law." <u>Id.</u> at 251-52. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. <u>Garratt v. Walker</u>, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

### A.

The Court first considers Newbern's motion to strike (Dkt. # 110). Newbern asserts that the affidavit of Brian Carleton, the Vice President of Operations for Gavilon Grain, submitted as an exhibit to the response to Newbern's motion for summary judgment (Dkt. # 107-1) should be stricken because it is an "attempt to create a sham fact question" and "is inconsistent with Gavilon Plaintiffs' prior discovery responses." Dkt. # 110, at 2. Plaintiffs respond that the Carleton affidavit is consistent with prior statements about the property damaged by the wall collapse and, at most, provides clarification on the issue of ownership. Dkt. # 119, at 11.

The Carleton affidavit states that when the wall of the fertilizer storage building collapsed, it also destroyed an adjacent building, the MCC room. Dkt. # 107-1, at 3. Carleton attests that the MCC Room was a separate building from the fertilizer storage building that suffered the wall collapse. <u>Id.</u> Carleton attests that MCC Room itself was owned by Gavilon Grain, but that the controls, starters, and other electrical equipment inside the building is personal property that was owned by Gavilon Fertilizer, which operated the facility. <u>Id.</u> Newbern asserts that this affidavit is the first assertion by any plaintiff that Gavilon Fertilizer owned any property damaged by the wall collapse, and that it should be stricken as a sham affidavit. Dkt. # 110, at 7.

5

Newbern identifies the second amended complaint[3] and prior discovery responses including answers to interrogatories and requests for production as support for its position that Carleton's affidavit attempts to create a sham question of fact. Id. at 3-5. The second amended complaint identifies Gavilon Fertilizer as the party that operated the storage facility and Gavilon Grain as the lessee of the property. Dkt. # 54. The second amended complaint also details property damage suffered due to the wall collapse, but does not specifically allocate ownership of the damaged property. See id.

With respect to discovery responses, both Gavilon Grain and Gavilon Fertilizer answered interrogatories regarding property damage each party sustained. Gavilon Grain detailed its property damage as follows: "Wall of west storage bay, together with adjacent fixtures and MCC Control Room were destroyed or compromised." Dkt. # 110, at 8. Gavilon Fertilizer, in response to the same question about the property damage it suffered, responded "amount of property damage unknown at this time." Dkt. # 119-1, at 3. Gavilon Grain and Gavilon Fertilizer were also served with requests for production. Gavilon Fertilizer provided Newbern documents related to any replacement or repairs Gavilon Fertilizer expected would be required based on property damage sustained in the wall collapse, as well as documents related to any damages that Gavilon Fertilizer sustained. Dkt. # 119-2, at 2,4. In response to its requests for production, Gavilon Grain answered each request with the following:

---

[3]   To the extent that Newbern asserts that the Court should consider the original petition and amended complaint, the Court declines to do so because the second amended complaint superseded all previous complaints and rendered them a legal nullity. See Davis v. TXO Prod. Corp., 929 F.2d 1515, 1517 (10th Cir. 1991) (explaining that it is a well-established rule that an amended complaint supersedes the original complaint and renders it of no legal effect).

> The facility which is the subject of this action was operated by Gavilon Fertilizer, LLC rather than Gavilon Grain, LLC and all extra expense, loss of use and lost profits were therefore incurred by Gavilon Fertilizer, LLC rather than Gavilon Grain, LLC.  Gavilon Grain, LLC's interest in these proceedings arises as lessee of the premises and relates to the cost of repairing and/or replacing the defective construction resulting in the wall collapse.

Dkt. # 110, at 25.

Newbern asserts that the second amended complaint and discovery responses demonstrate that the Carleton affidavit is a sham and should be stricken.  But Newbern never deposed any Gavilon Grain or Gavilon Fertilizer representative with respect to the issue of property ownership. Although Newbern noticed 30(b)(6) depositions for both Gavilon Grain and Gavilon Fertilizer that included topics relating to ownership of property damaged by the wall collapse, Newbern concedes that no examination regarding property ownership ever occurred.  Newbern served  Gavilon Grain with a 30(b)(6) notice that included a topic related to the "[o]wnwership and use of the subject fertilizer building, and associated equipment, accessories, controls, and attachments."  Dkt. # 110, at 33.  Gavilon Grain designated Bill Arroyo to testify as to this topic; however, Gavilon Grain withdrew him as a designated representative for this topic moments before the deposition began. Id. at 35.  Newbern served Gavilon Fertilizer with a 30(b)(6) notice, which included a topic related to "[a]ny property owned by Gavilon Fertilizer, LLC that was damaged by the wall collapse, and all documentation relating to ownership of such property." Id. at 41.  Gavilon Fertilizer did not provide any representative designated to testify as to this topic.  Brian Carleton provided testimony on behalf of both Gavilon Grain and Gavilon Fertilizer, but was not designated to testify to these topics for either plaintiff.  The Court has reviewed the docket sheet and notes that Newbern never filed a motion to compel testimony from a designated representative from either Gavilon Grain or Gavilon Fertilizer related to the topics of ownership included in the 30(b)(6) notices.  Instead, Newbern filed

7

its motion for summary judgment, asserting that it is undisputed that Gavilon Fertilizer owned no property that was damaged in the wall collapse.

Newbern argues that Carleton's affidavit should be stricken pursuant to the sham affidavit rule. "'[A]n affidavit may not be disregarded [solely] because it conflicts with the affiant's prior sworn statements. In assessing a conflict under these circumstances, however, courts will disregard a contrary affidavit whey they conclude that it constitutes an attempt to create a sham fact issue.'" Law Co., Inc. v. Mohawk Const. and Supply Co., Inc., 577 F.3d 1164. 1169 (10th Cir. 2009) (alterations in original) (quoting Franks v. Nimmo, 796 F.2d 1230, 1237 (10th Cir. 1986)).

> To determine whether a contradicting affidavit seeks to create a sham fact issue, we have looked to three factors: whether "(1) the affiant was cross-examined during his earlier testimony, (2) the affiant had access to pertinent evidence at the time of his earlier testimony was based on newly discovered evidence; and (3) the earlier testimony reflects confusion which the affidavit attempts to explain."

Ralson v. Smith & Newphew Richards, Inc., 275 F.3d 965, 973 (2001) (quoting Rios v. Bigler, 67 F.3d 1543, 1551 (10th Cir. 1995)).

Based on the foregoing, the Court concludes that the Carleton affidavit is not a sham affidavit and should not be stricken. The Court finds the third factor of the sham-affidavit analysis dispositive. The Carleton affidavit provides clarification on the issue of ownership; it is not inconsistent with prior discovery responses. And Newbern seized upon the opportunity to file a motion for summary judgment without seeking clarification on the property ownership issue. Newbern could have filed a motion to compel testimony regarding the ownership of controls and equipment housed in the MCC room, but instead chose to file its motion for summary judgment without such testimony. And, as plaintiffs rightfully note, they are entitled to designate representatives to testify about particular topics. Gavilon Grain's designation of Bill Arroyo to

8

testify about ownership issues and Gavilon Grain's subsequent withdrawal of this designation, moments before the deposition began, is permissible; the Court will not use it as evidence in support of Newbern's argument.   Newbern's recourse in this situation was to file a motion to compel designation of a 30(b)(6) representative of each company to give testimony regarding the ownership of materials in the MCC Room; that Newbern did not avail itself of this remedy should not be held against plaintiffs.   Newbern's motion to strike should thus be denied.

## B.

Turning to the merits of Newbern's arguments, Newbern asserts that it is entitled to summary judgment because: (i) the breach of contract claim is barred by a five-year statute of limitations; (ii) the Gavilon plaintiffs cannot recover for their tort claim as a matter of law because their claim is barred by either a "contractual" economic loss rule or a "stranger" economic loss rule; and (iii) subrogated insurers cannot recover as a matter of law because the Gavilon plaintiffs' claims fail as a matter of law.   Dkt. # 100, at 13-14.

## i.

The Court first considers Newbern's argument that it is entitled to summary judgment on plaintiffs' contract claim, asserting that such claim is time-barred.   Dkt. # 100, at 13.   Newbern asserts that plaintiffs' contract claim is governed by a five year statute of limitations, which began to run in 2005 when the storage building was substantially completed.   Id. at 15.   Plaintiffs assert that the contract between the parties included a prospective covenant that the facility would be fit

and suitable for its intended use, and argues that the limitations period did not begin to run until the March 7, 2013 wall collapse.[4]  Dkt. # 107, at 8.

Under Oklahoma law, "[a]n action upon any contract, agreement, or promise in writing" is subject to a five-year statute of limitations.  OKLA. STAT. tit. 12, § 95(a)(1).  And "[t]he cause of action for breach of a contract for construction arises at the contract's completion."  Kirby v. Jean's Plumbing Heat & Air, 222 P.3d 21, 27 (Okla. 2009).  Oklahoma courts have declined to apply the discovery rule, whereby a statute of limitations begins to run only upon discovery of a defect, to actions based upon breach of construction contracts.  Id.; Samuel Roberts Noble Foundation, Inc. v. Vick, 840 P.2d 619, 622-23 (Okla. 1992) (declining to extend the discovery rule for claims of breach of construction contracts); see also Jaworsky v. Frolich, 850 P.2d 1052, 1054 (Okla. 1992) (explaining that the court "expressly rejected the rule that a cause of action for breach of contract does not accrue until discovery of the defect" with respect to a construction contract).  Newbern argues that, because construction on the fertilizer storage building was substantially complete in late 2005 and plaintiffs did not file this action until 2014, the statute of limitations bars plaintiffs' claim.  Although a five-year statute of limitations for a breach of contract claim ordinarily applies, plaintiffs assert that the breach of contract claim alleges breaches of both express and implied contractual obligations, the latter of which would not begin to accrue until discovery of the defect.  Dkt. # 107, at 8.

---

[4]      In support of its argument, plaintiffs cites Sampson Const. Co. v. Farmers Co-op Elevator Co., 382 F.2d 645 (10th Cir. 1967) (applying Oklahoma law), arguing that it involves a factually similar scenario and urging the Court to reach the same result.  However, as the plaintiffs note, this case was decided by the Tenth Circuit in 1967, decades before the more recent Oklahoma Supreme Court guidance in Kirby, Noble, and Jaworksy.  The Court agrees with plaintiffs that these more recent cases more accurately reflect the current landscape of Oklahoma law.

Under Oklahoma law, "[a] contract includes not only the promises set forth in express words, but, in addition, all such circumstances under which it was made." Miler v. Ind. Sch. Dist. No. 56, 609 P.2d 756, 758 (Okla. 1980). The implied warranty for a particular purpose is a creature of statute, established by Oklahoma's adoption of the Uniform Commercial Code (U.C.C.) provision in Okla. Stat. tit. 12A, § 2-315. The U.C.C. applies only to a sale of goods. See, e.g., Redwine v. Baptist Gen. Conv. of Okla., 681 P.2d 1121, 1124 (Okla. App. 1982). Neither party has addressed whether materials installed as part of a construction contract constitutes a sale for purposes of the U.C.C. However, assuming the installation of materials as part of a construction contract constitutes a sale for purposes of the U.C.C., plaintiffs' claim is governed by the five-year statute of limitations period set out in OKLA. STAT. tit. 12A, § 2-725, which "accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." Thus, the limitations period for a claim under section 2-315 would have started to run at the completion of construction, and plaintiffs' claim would be untimely.

Construction on the storage building was substantially complete by late 2005 or early 2006. Any contract claim based on this construction job was subject to a five-year statute of limitations under OKLA. STAT. tit. 12, § 95(a)(1), or OKLA. STAT. tit. 12A, § 2-725. The discovery rule does not operate to toll any statute of limitations. Therefore, plaintiffs' contract claim, filed in 2014, is untimely. The Court thus concludes that summary judgment is appropriate as to plaintiffs' contract claim.[5]

---

[5]     The Court notes that Newbern also asserts that Gavilon Fertilizer cannot recover on the breach of contract claim because it was not a party to the contract. Dkt. # 111, at 6. Gavilon Fertilizer, in its response to Newbern's motion for summary judgment, did not address this argument. However, because the contract claim is time-barred, the Court need not reach the issue.

**ii.**

Newbern next asserts that Gavilon Grain cannot recover for its negligence claim because it is barred by what Newbern terms the "contractual" economic loss rule, and characterizes as a rule that a plaintiff may not recover in tort for damages to a property constructed pursuant to a contract or to associated property integral to the function of the property. Dkt. # 100, at 27. Plaintiffs respond that the "contractual" economic loss rule applies to products liability cases only and should not be extended to claims of negligent construction. Dkt. # 107, at 11-12.

In Waggoner v. Town & Country Mobile Homes, Inc., 808 P.2d 649 (Okla. 1990), the Oklahoma Supreme Court first recognized the "contractual" economic loss rule, under which "no action lies in manufacturer's products liability for purely economic injury to the product itself." Dutsch v. Sea Ray Boats, Inc., 845 P.2d 187, 193 (Okla. 1992) (reaffirming Waggoner economic loss rule). Explaining the reasoning behind this rule, the Oklahoma Supreme Court has stated that "the purpose of adopting the theory of manufacturer's products liability in tort cases was not to do away with contractual liability under the Uniform Commercial Code. When purely economic damages occur and there is no damage to person or other property, U.C.C. remedies are sufficient to protect the plaintiff." Id.

Newbern urges the Court to extend the "contractual" economic loss rule to claims of negligent construction. But at least one other court considering whether Oklahoma courts would extend the "contractual" economic loss rule to claims outside of products liability cases has concluded that it was inappropriate to apply the rule beyond products liability. See Compusorce Okla. v. BNY Mellon, N.A., No. CIV-08-469-KEW, 2009 WL 2366112, at *2 (E.D. Okla. July 31, 2009) ("No authority has been cited from a court in Oklahoma specifically adopting the economic

loss rule outside of the products liability arena. . . . . [T]his Court is not prepared to conclude Oklahoma would adopt the economic loss rule in the context of this case.").

Like that court, this Court is unprepared to conclude that Oklahoma courts would adopt the "contractual" economic loss rule in areas of the law beyond products liability. Oklahoma courts have given no indication, nor has Newbern identified any authority suggesting, that Oklahoma courts would extend the reach of this economic loss doctrine to negligent construction claims.[6] Oklahoma courts have clearly discussed the "contractual" economic loss rule in the context of products liability only. See, e.g., Dutsch, 845 P.2d at 193 ("The purpose of Waggoner–to preserve the remedies of the U.C.C.–is upheld by limiting a plaintiff seeking only recovery for the product itself to U.C.C. remedies."). The absence of any language in these opinions indicating that Oklahoma courts would consider applying the rule to different contexts convinces this Court that applying the rule in this instance would be inappropriate. As such, the Court declines to apply the "contractual" economic loss rule to bar plaintiffs' claim. Newbern's motion for summary judgment on this basis should be denied.

### iii.

Newbern also asserts that it is entitled to summary judgment on Gavilon Fertilizer's negligence claim, arguing that Gavilon Fertilizer's tort claim is barred by both the "contractual" economic loss rule and what it terms the "stranger" economic loss rule. Dkt. # 100, at 17, 27. Plaintiffs respond that there is a genuine dispute of material fact regarding whether Gavilon

---

[6]     Newbern identifies case law from other jurisdictions in support of its argument that this Court should extend the "contractual" economic loss rule to negligent construction claims. Dkt. # 100, at 28. However, these cases do not provide any basis for this Court to conclude that Oklahoma courts would extend this rule to negligent construction claims and the Court remains unpersuaded.

Fertilizer owned any property damaged in the wall collapse and asserts that Newbern's argument regarding "stranger" economic loss relies on a theory that has not been, and is unlikely to be, accepted by Oklahoma courts. Dkt. # 107, at 11. As to the "contractual" economic loss rule, plaintiffs argue that, for the same reasons it should not bar Gavilon Grain's claim, it should not be applied to bar Gavilon Fertilizer's claim. Dkt. # 107, at 12.

First, to the extent that Newbern asserts that Gavilon Fertilizer cannot recover for its negligence claim based on the "contractual" economic loss theory, for the same reasons the Court concludes that the "contractual" economic loss rule does not apply to bar Gavilon Grain's claim, it concludes the same as to Gavilon Fertilizer. Second, Newbern urges the Court to apply what it terms the "stranger" economic loss rule to bar Gavilon Fertilizer's negligence claim against Newbern. Under this rule, a plaintiff may not recover for a purely economic loss in the absence of some special relationship between the plaintiff and the tortfeasor. Dkt. # 100, at 18 (citing Aikens v. Debow, 541 S.E.2d 576, 583 (W.Va. 2000)).

Oklahoma courts have not adopted this rule, but Newbern asserts that the Court should apply the rule in the context of this case. Dkt. # 100, at 17. However, the Court need not reach the issue at this stage in the ligation. As discussed above in relation to the motion to strike, the parties dispute whether Gavilon Fertilizer owned any property that was damaged by the wall collapse, i.e. whether Gavilon Fertilizer suffered a purely economic loss. The Court denied Newbern's motion to strike, thus allowing the Carleton affidavit as evidence of Gavilon Fertilizer's ownership of controls and equipment located in the MCC Room. Based on this affidavit, the Court concludes that there is a genuine dispute of material fact regarding ownership of damaged property, including controls and equipment located in the MCC room. Because the Court concludes that there is a disputed material

14

fact concerning whether Gavilon Fertilizer suffered economic losses only, the Court need not resolve at this point whether Oklahoma courts would adopt the "stranger" economic loss rule.  The Court will address this issue in the event of a finding of fact from a jury that plaintiff Gavilon Fertilizer suffered economic losses only and did not own any property damaged or destroyed by the wall collapse.  Newbern's motion for summary judgment on this basis should be denied.

### iv.

Newbern finally asserts that the insurers' claims depend upon the validity of the claims asserted by the Gavilon plaintiffs, and in the absence of a cognizable claim by the Gavilon plaintiffs, the insurers may not recover.  Dkt. # 100, at 13-14.  Under Oklahoma law, "[a] subrogee steps into the shoes of the plaintiff 'subject to all legal and equitable defense which the [tortfeasor] may have against the [plaintiff.]'"  Empl. Mut. Cas. Co. v. Mosby, 943 P.2d 593, 595 (Okla. 1997) (second and third alteration in original) (quoting Moore v. White, 603 P.2d 1119, 1121 (Okla. 1979)).  Thus, "a subrogee acquires no rights greater than those of the party whose claim it has paid."  Id.  Because the Court concludes that Newbern is not entitled to summary judgment on the negligence claim, the Court cannot conclude that, as a matter of law, the insurers have no claim for relief against Newbern.

### IV.

In sum, the Court concludes that Newbern's motion to strike should be denied because the plaintiffs have not presented a sham affidavit.  Instead, plaintiffs offer evidence clarifying an issue of ownership.  The Court also concludes that plaintiffs' breach of contract claim is time barred because it was brought outside of the five-year statute of limitations, which began running upon completion of construction, either in late 2005 or early 2006. Next, the Court concludes that the plaintiffs' negligence claim is not barred as a matter of law because the Court declines to adopt the

"contractual" economic loss rule outside the products liability area and because a disputed material fact renders a decision regarding the application of the "stranger" economic loss rule premature. Finally, the Court concludes that, because the Gavilon plaintiffs still have claims for recovery, Newbern has not shown that the insurer plaintiffs cannot recover as a matter of law.  Newbern is thus entitled to summary judgment on plaintiffs' contract claim, but summary judgment on plaintiffs' negligence claim should be denied.

   **IT IS THEREFORE ORDERED** that Defendant Newbern Fabricating Inc.'s Motion for Summary Judgment and Brief in Support (Dkt. # 100) and the insurers' joinder (Dkt. # 108) is **granted in part and denied in part** as follows: summary judgment is granted as to plaintiffs' contract claim and denied as to plaintiffs' negligence claim.  Newbern Fabricating Inc's Motion to Strike Affidavit of Brian Carleton (Dkt. # 110) is **denied**.

   **DATED** this 28th day of July, 2016.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE