## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **LEXINGTON INSURANCE COMPANY;** | ) | |
| **GAVILON FERTILIZER, LLC; CERTAIN** | ) | |
| **UNDERWRITERS AT LLOYD'S OF** | ) | |
| **LONDON; and GAVILON GRAIN, LLC,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 14-CV-0610-CVE-TLW** |
| | ) | |
| **NEWBERN FABRICATING, INC., and** | ) | |
| **BAUCOM CONCRETE CONSTRUCTION,** | ) | |
| **INC.,** | ) | |
| | ) | |
| **Defendants,** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **NEWBERN FABRICATING, INC.,** | ) | |
| | ) | |
| **Third-Party Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **DOVELAND ENGINEERING CO.,** | ) | |
| | ) | |
| **Third-Party Defendant** | ) | |
| | ) | |
| **and** | ) | |
| | ) | |
| **BAUCOM CONCRETE CONSTRUCTION,** | ) | |
| **INC.,** | ) | |
| | ) | |
| **Third-Party Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **COMMERCIAL METALS COMPANY,** | ) | |
| | ) | |
| **Third-Party Defendant.** | ) | |

## OPINION AND ORDER

Now before the Court is Defendant Baucom Concrete Construction, Inc.'s (Baucom) Motion for Partial Summary Judgment (Dkt. # 198).[1] Baucom argues that plaintiffs' claim against it is barred by the statute of limitations and that plaintiffs may not recover for damages related to non-party Mosaic Crop Nutrition, LLC (Mosaic). Dkt. # 198, at 2. Plaintiffs Gavilon Grain, LLC (Gavilon Grain) and Gavilon Fertilizer, LLC (Gavilon Fertilizer) respond that the statute of limitations does not bar their claim and that they are not seeking damages related to Mosaic. Dkt. # 242. Plaintiffs Lexington Insurance Company and Lloyd's of London (insurer plaintiffs) join in that response. Dkt. # 243.

### I.

This action arises from the collapse of a wall of a storage facility at the Tulsa Port of Catoosa on March 7, 2013. Plaintiff Gavilon Grain owned the building, which Gavilon Fertilizer used to store fertilizer.[2] Dkt. # 198, at 7; Dkt. # 242, at 3. In 2004, Gavilon Grain contracted with defendant Newbern Fabricating, Inc. (Newbern), a construction company that builds river terminals and equipment, to build a concrete storage building (building). Dkt. # 198, at 7; Dkt. # 242, at 3. The

---

[1]    The Court notes that several other motions are pending, including Third-Party Defendant Doveland Engineering Co.'s Motion for Summary Judgment and Brief in Support (Dkt. # 167) and Third-Party Defendant Commercial Metals Company's Motion for Summary Judgment and Brief in Support (Dkt. # 183). This opinion and order addresses only Baucom's motion for partial summary judgment.

[2]    In 2011, Gavilon Grain merged with DeBruce Grain, the party that contracted for and oversaw the construction of the storage facility. For clarity's sake, the Court refers to both entities as Gavilon Grain. Also in 2011, Gavilon Fertilizer merged with DeBruce Fertilizer. The Court refers to Gavlion Fertilizer as representative of both entities. See Dkt. # 285, at 3 n.2. When referencing Gavilon Grain and Gavilon Fertilizer together, the Court uses the Gavilon plaintiffs.

2

contract between Gavilon Grain and Newbern (original contract) authorized Newbern to employ subcontractors with prior approval from Gavilon Grain. Dt. # 198, at 8; Dkt. # 242, at 4. The original contract stipulated that by accepting a contract from Newbern, each subcontractor agreed that they had examined the general conditions of the original contract and agreed to be bound by all the terms, obligations, and conditions therein. Dkt. # 198-5, at 13. Additionally, the original contract provided that "[n]othing in the Contract Documents or in the Contractor's Agreement with any subcontractor shall create any contractual relation between a subcontractor and the owner." Id. Newbern entered into a subcontract with Baucom, in which Baucom would form and pour all concrete for the building. Dkt. # 198, at 9; Dkt. # 242, at 4. Construction on the concrete portion of the building was substantially completed by August 12, 2005. Dkt. # 198, at 9; Dkt. # 242, at 4.

In 2010, Gavilon Fertilizer entered into an agreement with Mosaic, in which Gavilon Fertilizer would provide Mosaic with warehouse facilities as well as loading, transfer, and unloading services for the fertilizer Mosaic would store in the building. Dkt. # 198-8, at 1. Mosaic agreed to assume all risk of loss for its fertilizer stored at the building, except for losses caused by Gavilon Fertilizer's negligence. Id. at 3.

On March 7, 2013, a concrete wall of the building collapsed, resulting in damage to the wall itself and the master control center, an adjacent room that housed controls, motors, and electronics that controlled the building's conveyer system. Dkt. # 54, at 4; Dkt. # 198, at 10; Dkt. # 242, at 5. The insurer plaintiffs paid a number of claims related to the losses sustained from the wall collapse. Dkt. # 54, 4-5. The Gavilon plaintiffs both suffered losses from the wall collapse, including damage to the building and associated equipment and loss of profit and use of facilities. Plaintiffs thereafter filed this action against defendants Newbern and Baucom, asserting that the damages were caused

3

by inadequate design and installation of the concrete columns. Id. at 5-9. Plaintiffs assert a negligence claim against Baucom, seeking damages not recovered from the insurer plaintiffs for "property damage, business interruption, and additional expenses [they] incurred as a result of the March 7th collapse." Dkt. # 242, at 6; Dkt. # 54. The insurer plaintiffs seek recovery of insurance payments made to and on behalf of the Gavilon plaintiffs. Dkt. # 54. Baucom now moves for partial summary judgment.

## II.

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" Id. at 327 (quoting Fed. R. Civ. P. 1).

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87

(1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." <u>Anderson</u>, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law." <u>Id.</u> at 251-52. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. <u>Garratt v. Walker</u>, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

### A.

Baucom argues that although plaintiffs' claim against it is labeled as a claim for negligence, the claim is actually a claim for breach of contract. Dkt. # 198, at 13. Baucom asserts that under the contractual relationships among Gavilon Grain, Newbern, and Baucom, Gavilon Grain agreed to assume the risk of loss or damage to the building. <u>Id.</u> at 15-16. Further, Baucom asserts that plaintiffs' claim is barred by the five-year statute of limitations for contract suits. <u>Id.</u> at 16-18. Plaintiffs respond that (1) the statute of limitations for a breach of contract claim has not run[3]; (2) no contractual relationship existed between Baucom and the Gavilon plaintiffs; and (3) plaintiffs have not brought a contract claim. Dkt. # 242, at 6-7.

---

[3]     The Court rejected this argument in its opinion and order (Dkt. # 285) granting in part and denying in part defendant Newbern's motion for summary judgment. Under Oklahoma law, the statute of limitations for breach of a construction contract begins running at the contract's completion. Because construction on the building was substantially completed by 2005 or 2006, the five-year statute of limitations for a breach of contract suit ran sometime in 2010 or 2011. <u>See</u> Dkt. # 285, at 9-11.

**i.**

The Court need not determine whether a contractual relationship exists between Baucom and Gavilon Grain because even if there were a contractual relationship, the contract would not bar plaintiffs' negligence claim. Baucom argues that article 20(e) of the general conditions bars plaintiffs' claim because Gavilon Grain assumed the risk of the wall collapsing. Dkt. # 198, at 15-16. The provision in question states:

> [Gavilon Grain] shall, however, assume the risk of loss or damage to all completed work performed at the site, or materials and supplies paid for and for which title has passed to [Gavilon Grain], caused by fire, extended coverage perils, vandalism, or malicious mischief, and shall indemnify and save harmless [Newbern] against any loss, cost or expense on account thereof.

Dkt. # 198-5, at 7. Baucom asserts that the wall collapse is covered under "extended coverage perils." Dkt. # 262, at 7-8. The contract does not include a definition of "extended coverage perils," but the rest of article strongly suggests that a wall collapse due to the alleged negligence of the builders does not fall under its definition.

Baucom cites the rule of ejusdem generis to support its argument that "extended coverage perils" covers the wall collapse because it "fall[s] within the same class of physical injury" as the other damaging situations listed. Baucom is correct in asserting that "extended coverage perils" should be interpreted in light of the other situations with which it is listed, but it has erred in interpreting "extended coverage perils" too broadly. What fire, vandalism, and malicious mischief have in common is not that they are "physical injuries," but they are damaging situations caused by forces outside the contracting parties. The most natural reading of "extended coverage perils" is that it refers to other unforseen problems that cannot be fairly attributed to the contracting parties.

6

Although a clear definition of "extended coverage perils" does not appear to exist under Oklahoma law, the phrase is not uncommon in insurance agreements. See, e.g., S.D. Warren Co. v. E. Elec. Corp., 183 F. Supp. 2d 113, 121 n.4 (D. Me. 2002); Fred Meyer, Inc. v. Cent. Mut. Ins. Co., 235 F. Supp. 540, 545-46 (D. Or. 1964); Anderson v. Council of the Unit Owners of the Gables on Tuckerman Condominium, 948 A.2d 11, 26 (Md. 2008); Unif. Condominium Act § 3-113(a)(1). Moreover, although the phrase is usually left undefined, when a definition (or at least more context) is provided, the meaning of "extended coverage perils" comports with the Court's interpretation of the phrase in the original contract. See, e.g., Pat Magarick & Ken Brownlee, Casualty Fire & Marine Investigation Checklists § 20:1 (9th ed. 2015) ("Dwelling forms are firm forms with extended peril coverage. The Basic Dwelling form is limited to the standard fire and extended coverage perils of windstorm, aircraft or vehicle damage, smoke, explosion, civil commotion or riot, or hail damages, in addition to fire and lightning damage. Both the perils and scope of coverage are relatively limited."); Consumer's Guide to Homeowner Insurance, Vt. Dep't of Fin. Reg., http://www.dfr.vermont.gov/insurance/insurance-consumer/consumers-guide-homeowner-insurance (last visited Oct. 31, 2016) ("Extended coverage perils usually include: riot, explosion, [damage inflicted by] vehicles . . . , civil commotion, smoke, hail, aircraft, windstorm, breakage of glass which is part of the building."). Therefore, while the meaning of "extended coverage perils" in the original contract is not entirely clear, the Court finds that a wall collapsing due to alleged negligent construction does not fall under its definition.

### ii.

Baucom also argues that plaintiffs' claim is time barred under the five-year statute of limitations for causes of action in contract. See Okla. Stat. tit. 12, § 95(A)(1). However, Baucom

offers no argument for why plaintiffs' claim should be characterized as a claim for breach of contract; instead, Baucom conclusively states that plaintiffs' claim is based on the contractual relationships among the parties. See Dkt. # 198, at 15, 18. The existence of a contract does not preclude a tort claim. "Oklahoma law has long recognized that an action for breach of contract and an action in tort may arise from the same set of facts." Finnell v. Seismic, 67 F.3d 339, 344 (Okla. 2003). In count two of the second amended complaint, entitled "Negligence Against Defendant Baucom," plaintiffs allege that:

> Defendant Baucom breached its duty owed to Gavilon Grain and Gavilon Fertilizer when it failed to use ordinary care during the perofmance of its services, including, but not limited to the following:
> a. Failing to install the endwall columns and their components in a reasonable, safe, and skillful manner, so as to not cause harm to others and their property;
> b. Improperly installing the endwall columns and necessary components, thereby causing and/or contributing to the collapse of the endwall columns;
> c. Failing to comply with applicable standards in the industry when installing the endwall columns;
> d. Failure to properly connect the ties to the longitudinal bars used in the construction of the incident endwall columns;
> e. Any other negligent acts or omissions that become known through the course of discovery

Dkt. # 54, at 7.  Plaintiffs' complaint clearly states a claim of negligence, and Baucom has given no reason nor cited to any precedent that would persuade the Court to characterize plaintiffs' claim as anything other than the negligence claim it is.

### iii.

In their response, the Gavilon plaintiffs cite to several cases from other jurisdictions in which courts have found that there can be no breach of contract suit between an owner and a subcontractor when the contract between the owner and the general contractor expressly rejected a contractual relationship between the owner and any subcontractors. Baucom argues that one of these cases,

Pierce Associates, Inc. v. Nemours Foundations, 865 F.2d 530 (3d Cir. 1988), would bar plaintiffs from bringing a negligence claim against Baucom. Dkt. # 262, at 5-6. In Pierce, the Third Circuit held that the owner of a hospital that was subject to a construction contract could not maintain a breach of contract action against a subcontractor where (1) the contract between the owner and the general contractor explicitly repudiated a contractual relationship between the owner and any subcontractors, and (2) the subcontractor agreed to be bound by the terms and conditions of the original contract in its subcontract with the general contractor. 865 F.3d at 533-39. The Third Circuit also held that the owner could not sue the subcontractor for negligence because there was no privity of contract. Id. at 541.

Baucom asserts that under the reasoning of Pierce, plaintiffs have no viable claim against Baucom. Dkt. # 262, at 6. First, Pierce is an out-of-circuit opinion based on Delaware law. To the Court's knowledge, no Oklahoma court has barred a tort claim brought by an owner against a subcontractor because they lacked privity of contract. Moreover, although no Oklahoma court seems to have squarely addressed the argument, the Oklahoma Supreme Court affirmed a judgment in which an owner brought a negligence claim directly against a subcontractor. See Smith v. Johnston, 591 P.2d 1260 (Okla. 1979) (affirming an award of damages to a homeowner who brought, inter alia, a negligence claim against a general contractor and an electrical subcontractor).

Second, under the reasoning of Pierce, it is unclear whether plaintiffs would be able to bring their negligence claim. In discussing the plaintiff's negligence claim, the Pierce court made clear that a negligence claim for purely economic damages could not be brought without privity of contract under Delaware law. 865 F.3d at 539-41. In predicting how the Delaware Supreme Court would answer the question, the Third Circuit found the distinction between suits for purely economic

damages and claims involving physical injury to property to be essential to their holding. Id. In Pierce, there was no dispute that the claim was for purely economic losses and did not involve property damage. Id. at 539-40. Here, plaintiffs assert property damage. Thus, there is no indication that the Oklahoma Supreme Court would limit the ability of an owner to sue a subcontractor for negligence to situations in which there is privity of contract, and even if it were to do so, it is possible an exception would be made for cases, such as this one, which involve property damage.

In summary, plaintiffs' claim is not barred by contract because even if there is a contractual relationship between Gavilon Grain and Baucom, under the general conditions, Gavilon Grain did not assume risk of loss for the collapse of a wall due to the wall's allegedly negligent construction. Moreover, plaintiffs' claim is not barred by the statute of limitations for contract claims because plaintiffs' claim is in negligence and not contract. Finally, Oklahoma law does not prohibit plaintiffs from asserting a negligence claim against Baucom even if there is no privity of contract.

**B.**

Baucom argues that Gavilon Fertilizer and the insurance plaintiffs may not recover for (1) damages to or losses resulting from Mosaic's fertilizer that was in the building at the time of the collapse, or (2) any tortious interference with the business between Gavilon Fertilizer and Mosaic. Dkt. # 198, at 18. Plaintiffs assert (1) that they are not seeking to recover for any damage or loss to Mosaic's fertilizer, and (2) that they are making no claim of tortious interference with a business relationship. Dkt. # 242, at 13.

Baucom's reply seems to argue that Gavilon Fertilizer must be seeking damages for Mosaic's products because Gavilon Fertilizer does not have a claim for anything else. Dkt. # 262, at 8. However, Gavilon Fertilizer has presented evidence that it owned property damaged by the wall

collapse. See Dkt. # 285, at 5-9. Thus, Gavilon Fertilizer has a viable claim for negligence and is not seeking to recover for damage or loss to Mosaic's fertilizer.

Baucom's reply also argues that plaintiffs are seeking damages for tortious interference with business because they are seeking compensation for "lost business margins." Dkt. # 262, at 9. Plaintiffs assert that they are seeking to recover for property damage, extra expense and business interruption payments that the insurer plaintiffs paid to the Gavilon plaintiffs, other business interruption and lost profits, litigation expenses, and attorneys' fees. Dkt. # 242-1, at 2-3.

Baucom appears to have misunderstood plaintiffs' claim and their grounds for recovery. Plaintiffs have brought a negligence claim against Baucom. Tortious interference with a business relationship is an entirely separate claim. See Tuffy's, Inc. v. City of Okla. City, 212 P.3d 1158 (Okla. 2009). The Court is not aware of any indication that plaintiffs are pursuing a claim of tortious interference with a business relationship.

Under Oklahoma law, plaintiffs may recover damages in "the amount which will compensate for all detriment proximately caused [by Baucom's negligence], whether it could have been anticipated or not." Okla. Stat. tit. 23, § 61. Plaintiff seeks to recover profits lost because the wall collapse interrupted their business. Even if the plaintiffs prevail in their negligence claim against Baucom, the Gavilon plaintiffs' lost profits may prove too remote or speculative to warrant recovery under Oklahoma law. See City of Collinsville v. Brickey, 242 P. 249, 253 (Okla. 1925). However, there is no legal bar at this time to plaintiffs pursuing recovery for the damages they seek. Thus, Baucom's motion for partial summary judgment is moot as to its arguments that Gavilon Fertilizer and the insurer plaintiffs may not recover damages for Mosaic's fertilizer or for interference with

11

the business relationship between Gavilon Fertilizer and Mosaic because plaintiffs are not seeking such damages.

**IT IS THEREFORE ORDERED** that Defendant Baucom Concrete Construction, Inc.'s Motion for Partial Summary Judgment (Dkt. # 198) is **denied in part and moot in part**: it is denied as to Baucom's arguments that plaintiffs' claim is barred under the original contract or Okla. Stat. tit. 12, § 95(A)(1); it is moot as to Baucom's argument that Gavilon Fertilizer and the insurer plaintiffs may not recover for Mosaic's products or interference with Gavilon Fertilizer's business relationship with Mosaic.

**DATED** this 2nd day of November, 2016.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE