IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LEXINGTON INSURANCE COMPANY; GAVILON FERTILIZER, LLC; CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON; and GAVILON GRAIN, LLC, | ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) Case No. 14-cv-610-CVE-TLW ) |
| NEWBERN FABRICATING, INC., and BAUCOM CONCRETE CONSTRUCTION, INC., | ) ) ) ) |
| Defendants, | ) ) |
| and | ) ) |
| NEWBERN FABRICATING, INC., | ) ) |
| Third-Party Plaintiff, | ) ) |
| vs. | ) ) |
| DOVELAND ENGINEERING CO., | ) ) |
| Third-Party Defendant. | ) ) |

**REPORT AND RECOMMENDATION**

This action arises from the collapse of an exterior wall to a fertilizer storage building (the "Building") at the Tulsa Port of Catoosa on March 7, 2013. Plaintiff Gavilon Grain owned the Building, which Gavilon Fertilizer used to store fertilizer.[1] In 2004, Gavilon Grain contracted with defendant Newbern Fabricating, Inc., a construction company that builds river terminals and equipment, to construct the Facility. Third-Party Defendant Doveland Engineering Co., Third-

---

[1] When referencing Gavilon Grain and Gavilon Fertilizer together, the Court uses Gavilon.

Party Plaintiff Baucom Concrete Construction Co., and Third-Party Defendant Commercial Metals Company[2] were all contractors on the project. The Facility was operational in early 2006.

This Report and Recommendation addresses a Motion in Limine filed by Gavilon. (Dkt. 141). Gavilon's motion raises three issues, two of which the Court disposed of in its June 1, 2016 Order. (Dkt. 270). The remaining issue relates to the construction contract between Gavilon's predecessor, DeBruce Grain[3], and Newbern. Specifically, Gavilon seeks to exclude evidence that the contract imposed on it a duty to inspect and approve the installation of the rebar and thereby relieved Newbern and its subcontractors of liability for defects in the rebar installation.[4] (Dkt. 142). Gavilon argues that the contract clearly and unambiguously imposes the duty of proper installation of the rebar on Newbern and its subcontractors. Newbern and Baucom argue that the contract is at the very least ambiguous, and whether it imposed a duty on Gavilon to inspect the rebar and its method of attachment turns on the meaning of the word "placement," thus giving rise to an ambiguity and creating a question of fact for the jury. (Dkt. 200 at 6-8) ("it is for the jury to decide what Gavilon/DeBruce's responsibility was, whether they performed it . . ., and how that may have mitigated Gavilon's claims. . ..). Newbern and Baucom further argue that the failure of Gavilon to adhere to the contract is probative of Gavilon's claims.

The relevant provision of the contract provides that "[Gavilon's] project manager to observe and approve of all steel placement and sizes prior to concrete being poured." (Dkt. 142-7 at 5). "In

---

[2] The District Court entered summary judgment in favor of Commercial Metals on January 26, 2017, terminating Commercial Metals as a third-party defendant in this matter. (Dkt. 318).

[3] Although DeBruce Grain is the party who contracted with Newbern for the construction of the Building, Gavilon is the successor in interest to the contract. For ease of understanding, the Court will use Gavilon.

[4] The undersigned is resolving this issue by report and recommendation because it requires the undersigned to interpret the parties' contract in a manner that could be viewed as dispositive.

Oklahoma, the cardinal rule in contract interpretation is to determine and give effect to the intent of the parties."[5] In re Kaufman, 2001 OK 88, ¶ 13, 37 P.3d 845, 853. In this respect, "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others." Okla. Stat. tit. 15, § 157. Additionally, "[c]ontractual terms are ambiguous only if they can be interpreted as having two different meanings." In re Kaufman, 37 P.3d at n.38. The Oklahoma Supreme Court explained,

> Whether a contract term is ambiguous so as to require extrinsic evidence to determine the intent of the parties is purely a question of law for the court. *Russell Creek Coal Co.,* 1982 OK 24, ¶ 9, 645 P.2d at 1007. "The construction of an unambiguous contract is a matter of law for the court." *Id.* On the other hand, a contract term is ambiguous if it can be interpreted as having two or more meanings. *K & K Food Servs. v. S & H, Inc.,* 2000 OK 31, ¶ 8, 3 P.3d 705, 708. "Where the meaning of an ambiguous written contract is in dispute, evidence of extrinsic facts and circumstances throwing light on the intention of the parties is admissible." *Altshuler v. Malloy,* 1963 OK 243, ¶ 0, 388 P.2d 1, 2 (Syl. n. 2 by the Court). "[T]he construction of such a contract then becomes a mixed question of law and fact and should be submitted to the jury for its determination under proper instructions by the court." *Id.*

Ahlschlager v. Lawton School Dist., 242 P.3d 509, 515 (Okla. 2010).[6]

The parties agree that the provision of the contract at issue is unambiguous, with one exception, the meaning of the word "placement." Gavilon argues that this word excludes the method of attaching the rebar and Newbern and Baucom claim that it does not. (Dkt. 142 at 9). This issue is important to the parties because there is evidence that during construction of the Building the rebar was welded (the method of attachment), that it should not have been attached in this manner, and that doing so may have caused the Building to collapse. Neither Newbern nor

---

[5] In this diversity action, there appears to be no dispute amongst the parties that Oklahoma substantive law applies.

[6] Newbern and Baucom state that "[t]he decision on what 'placement' means and who was required to do what pursuant to the contract is the proper province of the jury." (Dkt. 200 at 8) (single quotations supplied). This statement is correct only if the term "placement" is ambiguous.

Baucom raised this issue in their summary judgment motions; thus, it is before the Court for the first time.

The contract does not define the word "placement," and as Gavilon notes (and Newbern and Baucom do not dispute), the contract does not explicitly address welds. In ordinary English usage, the word "placement" means, "an act or instance of placing; such as . . . an accurately hit ball (as in tennis) that an opponent cannot return [or] the assignment of a person to a suitable place (as a job or a class in school)."[7] MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY, at 888 (Frederick. C. Mish ed., Tenth ed. 1993). Based on this definition, the primary characteristic of the word "placement" is that it connotes location; that is, where something is to be put. But Newbern and Baucom argue that placement, as used in the contract, refers not only to where the steel is to be put, but also to what is to be done to the steel once it is put there (e.g., welded or tied). In considering this argument, the Court looks to the word "weld," which means "to unite (metallic parts) by heating and allowing the metals to flow together or by hammering or compressing with or without previous heating. . .." Id., at 1342. Thus, the term weld literally means joining together. The term weld is, therefore, both narrower than and requires something more than placement. For instance, two pieces of metal that are welded together must have first been "placed" next to each other, but two pieces of metal that are placed next to each may or may not, thereafter, be welded together.

The contract states only that Gavilon's project manager is to approve the placement of steel, meaning Gavilon's project manager was to approve the location of the steel. Were the Court to interpret "placement" as also requiring Gavilon to approve the "joining together" of the steel, the Court would be inserting an obligation, or possibly two obligations, not found in the contract: an

---

[7] Neither party has argued that "placement" has an industry specific meaning.

obligation on the part of Gavilon to approve the joining together of steel and possibly an obligation on the part of Newbern to weld the steel. Had the parties intended to impose either of these obligations, they could have included them in the contract. Based on the foregoing, the Court concludes that the word "placement," as used in the contract, is susceptible of only one meaning, where the steel was to be placed or located, not what was to be done to the steel once it was in place.

At the hearing, Newbern raised an additional basis (using the same contract provision) for admitting evidence that the contract required Gavilon to approve welds: that its understanding of the contract (i.e., that Gavilon had to approve any welds) is probative of the reasonableness of its actions vis-à-vis Gavilon's negligence claim. Regarding negligence, the Oklahoma Supreme Court has recognized that

> a person owes a duty of care to another person whenever the circumstances place the one person in a position towards the other person such that an ordinary prudent person would recognize that if he or she did not act with ordinary care and skill in regard to the circumstances, he or she may cause danger of injury to the other person.

Lowery v. Echostar Satellite Corp., 2007 OK 38, ¶ 13, 160 P.3d 959, 964. In the context of automobile accident cases, the Oklahoma Supreme Court poses the issue as whether the accused party exercised a degree of care which was reasonable and prudent under the circumstances. Dirickson v. Mings, 910 P.2d 1015, 1018 (Okla. 1996).

The gist of Newbern's argument is that because it understood the contract to require Gavilon to approve all welds, it exercised the degree of care that an ordinary prudent person would have under the circumstances when it allowed the rebar to be welded. In other words, since Newbern believed that the contract required Gavilon to approve the welds, Newbern acted reasonably in assuming that such approval had been given and in not preventing the steel from being welded.

But the standard is one of an ordinary prudent person and such a person would not have formed a belief or understanding based on an obligation that is not in the contract. For this reason, the Court finds Newbern's argument unpersuasive.

## RECOMMENDATION

Based on the foregoing, the undersigned recommends that Gavilon's Motion in Limine, to the extent it seeks to bar evidence at trial that the contract imposed on it a duty to inspect and approve any welds or other methods of attachment used on the rebar, be GRANTED.

## OBJECTION

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma by March 1, 2017.

If specific written objections are timely filed, Federal Rule of Civil Procedure 72(b)(3) directs the district judge to

> determine *de novo* any part of the magistrate judge's disposition to which a party has properly objected. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Id.; see also 28 U.S.C. § 636(b)(1). The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions." United States v. One Parcel of Real Property, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

SO ORDERED this 15th day of February, 2017.

_____
T. Lane Wilson
United States Magistrate Judge