# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| LEXINGTON INSURANCE COMPANY;<br>GAVILON FERTILIZER, LLC; CERTAIN<br>UNDERWRITERS AT LLOYD'S OF<br>LONDON; and GAVILON GRAIN, LLC, | ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 14-cv-610-CVE-TLW |
| | ) | |
| NEWBERN FABRICATING, INC., and<br>BAUCOM CONCRETE CONSTRUCTION,<br>INC., | ) ) ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| NEWBERN FABRICATING, INC., | ) | |
| | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| DOVELAND ENGINEERING CO., | ) | |
| | ) | |
| Third-Party Defendant. | ) | |

## REPORT AND RECOMMENDATION

This lawsuit arises out of the collapse of a portion of a grain storage building (the "Building") owned by plaintiff Gavilon Grain and leased to plaintiff Gavilon Fertilizer. Defendant Newbern Fabricating, Inc. constructed the building. Third-Party Defendant Doveland Engineering Co., Third-Party Plaintiff Baucom Concrete Construction Co., and Third-Party Defendant Commercial Metals Company were all subcontractors on the project.[1] Baucom Concrete

---

[1] The District Court granted summary judgment in favor of Commercial Metals Company on January 26, 2017. (Dkt. 318).

Construction Co. ("Baucom") has filed a motion seeking to exclude or limit the testimony of Brian Bretz. (Dkt. 147).

## I.

Lexington Insurance Company retained Bretz in March 2013 following the collapse of the Building to assess the scope of the damage and estimate the cost of repair. (Dkt. 147-2 at 1-10). At that time, Bretz completed a report describing his site investigation and setting out a "Rough Order-of-Magnitude Reserve Estimate." Id. In May 2013, Bretz completed a preliminary estimate and submitted it with a report. Id. at 11-13, 17-24; (Dkt. 147-4 at 9). In September 2013, Bretz completed a final estimate summary. (Dkt. 147-2 at 47-56); (Dkt. 147-4 at 15).

In September 2015, Bretz drafted another report that addressed Bretz's education and experience, the details of the collapse, a description of the March 2013 site inspection, and an explanation of the scope of repair work that Bretz estimated would need to be completed to restore the Building. (Dkt. 147-1). The report also stated that it included an "associated estimate of damage repairs," but no estimate was attached to the report. Id. At his deposition, Bretz testified that he was not sure which of his reports was intended to be his expert report. (Dkt. 147-4 at 8).

Before Bretz's deposition, Baucom emailed counsel for Lexington, stating that the Bretz report it had received appeared incomplete. (Dkt. 147-2 at 3). Baucom specifically requested information on the estimate of repairs. Id. Counsel for Lexington responded that the estimate was contained in documents previously provided in discovery. Id. at 1. Those Bates-stamped documents include the March 2013 report and rough cost projection, May 2013 report with estimate and invoice, an estimate dated September 2013, the September 2013 estimate with comparisons to Gavilon Grain's estimate, a final estimate dated November 2013, and a November 2013 letter from Bretz identifying the estimated time for repairs. Id. at 4-57. Other than this

2

response and a few statements during Bretz's deposition (one of which is referenced below), the record contains no evidence that counsel for Lexington made any attempt to clarify the expert report. When Baucom's counsel questioned Bretz about his electrical cost estimates, Bretz appears to state that the September 2013 estimate is the complete estimate. (Dkt. 147-4 at 16). However, it is unclear in this questioning whether Bretz is referring solely to "electrical" repairs or whether he is referring to the "estimate of damage repairs." Id. In any event, early in Bretz's deposition, Lexington's counsel clearly states that the May 2013 estimate is the document referenced in the expert report because there were no other cost estimates. (Dkt. 185-3 at 8, depo. p. 28, lns. 11-16). Yet, Bretz's deposition testimony indicates that there are some differences between the May 2013 and September 2013 estimates. (Dkt. 147-4; 185-3).

## II.

In its motion, Baucom argues that Bretz's report fails to meet the requirements of Federal Rule of Civil Procedure 26(a)(2)(B). (Dkt. 147). Specifically, Baucom notes that Bretz's report fails to include his opinion regarding the estimate for repairs and his rate for the work performed. Id. Baucom also argues that it was required to use the deposition to ascertain Bretz's opinion. Id. In response, Lexington argues that it disclosed Bretz's entire file to Baucom, so Baucom had all the information necessary to ascertain Bretz's opinion. (Dkt. 185). Lexington also argues that Baucom essentially admits that Bretz's formal report is sufficient.[2] Id.

Federal Rule of Civil Procedure 26(a)(2)(B) requires an expert report to include the following elements:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the facts or data considered by the witness in forming them;

---

[2] The undersigned finds this argument unpersuasive because it is supported only with selective quotes from Baucom's motion, and these quotes are taken out of context.

(iii) any exhibits that will be used to summarize or support them;
(iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
(v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
(vi) a statement of the compensation to be paid for the study and testimony in the case.

Id. As the rule indicates, the purpose of expert disclosures is "not only to identify the expert witness, but also 'to set forth the substance of the direct examination.'" Jacobsen v. Deseret Book Co., 287 F.3d 936, 953 (10th Cir. 2002) (quoting Fed. R. Civ. P. 26(a)(2) advisory committee's notes to the 1993 Amendments). The disclosures are also required so that the opposing party may have "'a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses.'" Id. at 953 (quoting Fed. R. Civ. P. 26(a)(2) advisory committee's notes to the 1993 Amendments).

Rule 37 governs the resolution of this issue. When a party fails to provide information regarding a witness as Rule 26(a) requires, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court." Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co., 170 F.3d 985, 993 (10th Cir. 1999) (quoting Mid–America Tablewares, Inc. v. Mogi Trading Co., 100 F.3d 1353, 1363 (7th Cir. 1996)). See also Jacobsen, 287 F.3d at 953 (citing Woodworker's Supply). The district court is not required to "make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose." Id. (citing United States v. $9,041,598.68, 163 F.3d 238, 252 (5th Cir. 1998). Nonetheless, the court should be guided by the following factors: (1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party

to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the non-moving party's bad faith or willfulness. See id. The burden to establish substantial justification and harmlessness rests with the non-moving party. See Murphy v. Spring, 58 F.Supp.3d 1241, 1274 (N.D.Okla. 2014) (citation omitted).

The undersigned concurs with Baucom's characterization of the written report. Bretz's expert report, as it is written, fails to comply with Rule 26 as follows: (1) it does not contain an opinion regarding the cost of repairs to the Building; (2) it does not include any facts, data, or exhibits necessary to support an opinion; (3) it does not include a list of Bretz's publications in the last ten years or cases in which he was involved in the last four years; and (4) it does not include any information regarding Bretz's compensation for his work and/or testimony. (Dkt. 147-1).

Lexington argues that Baucom's argument is without merit because Lexington disclosed Bretz's entire file in discovery. (Dkt. 185). Lexington states that, "[g]iven the depth and volume of documents that Plaintiff have [sic] provided Baucom in this [sic], Baucom cannot, in good faith, claim that they are unaware of Mr. Bretz's opinions or his estimate of damages." Id. at 4. Baucom argues, however, that the fifty-four pages that Lexington provided were never supplemented as part of the expert report. (Dkt. 147). Baucom further argues that Bretz was unable, at his deposition, to identify which estimate serves as the basis for his opinion. Id.

Lexington's argument is without merit. The purpose of a Rule 26 expert report is "to eliminate surprise and provide the opposing party with enough information regarding the expert's opinions and methodology to prepare efficiently for deposition, any pretrial motions and trial." See Cook v. Rockwell Int'l Corp., 580 F.Supp.2d 1071, 1122 (D.Colo. 2006). Counsel for Lexington, not Bretz, identified fifty-four pages it had previously produced in discovery as constituting Bretz's entire file and directed Baucom to consider those documents as Bretz's expert

opinion. Counsel's directive may be a proper amendment or supplement to Bretz's Rule 26 report because "[t]here is, however, no obligation to provide supplemental or corrective information that has been otherwise made known to the parties in writing or during the discovery process." Fed. R. Civ. P. 26(e) advisory committee's note (1993). However, even if the documents produced during discovery and identified as Bretz's "entire file" were properly incorporated into Bretz's report under Rule 26, those documents contained more than one estimate, leaving Baucom to guess which estimate was the proper one. Then, during the deposition, Bretz testified that he did not know which estimate formed the basis of his expert opinion. (Dkt. 147-4 at 16). Counsel for Lexington answered Baucom's question instead, identifying the May 2013 estimate, but that answer may have been contradicted by Bretz's own testimony that the September 2013 estimate was the final estimate. Id.; (Dkt. 185-3 at 8).

These facts, even considering Lexington's inadequate attempts to argue that it satisfied the requirements of Rule 26, establish that Bretz's report did not meet the directives of Rule 26(a)(2) and that counsel's attempts to clarify the opinion both before and during the deposition did not satisfy the requirements to correct or supplement under Rule 26(e). Essentially, Lexington claims that because it produced Bretz's work papers, which somewhere contain Bretz's opinions, it complied with its obligations. Rule 26 does not function in this manner. Further, Lexington's failure to produce an expert report, much less a clear one, was not substantially justified – in fact, Lexington does not even attempt to justify its failure, instead arguing that it made no mistake at all in submitting Bretz's expert report.

As to prejudice, Baucom contends that it was not able to ascertain the content of Bretz's expert report until the Bretz deposition in March 2016. (Dkt. 147). Lexington makes no argument in response, and the burden lies with Lexington to do so. See Murphy, 58 F.Supp.3d at 1274

6

(stating that "It is the burden of the non-moving party to show that the failure to comply with the rules is substantially justified or harmless."). For this reason alone, a finding of prejudice is proper.

In addition, Bretz and Lexington's counsel gave conflicting statements about which documents formed the basis of Bretz's opinion. The discrepancy is important because the May 2013 and September 2013 estimates are not identical. For example, Baucom has raised a specific challenge to Bretz's opinion regarding the differing amounts cited for electrical repairs between the May 2013 estimate and the September 2013 estimate. (Dkt. 147). Bretz's testimony regarding those differences is vague. He could not state why he had revised the numbers or point to any documentation to support the change. (Dkt. 147-3). Moreover, Bretz was unable to identify, even during his deposition, precisely what constitutes his report or his opinions. Thus, the undersigned concludes that Baucom has suffered prejudice as a result of Lexington's failure to comply with Rule 26. See Jacobson, 287 F.3d at 954 (citing the possibility of prejudice when a designated expert could testify to an opinion not contained in the expert report).

## RECOMMENDATION

For these reasons, the undersigned recommends that Baucom's Motion to Exclude or Limit Testimony of Brian Bretz (dkt. 147) be **GRANTED** because the failure to comply with Rule 26 was not substantially justified and because Lexington has not established that the failure was harmless.

## OBJECTION

In accordance with 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma by March 10, 2017.

If specific written objections are timely filed, Federal Rule of Civil Procedure 72(b)(3) directs the district judge to

> determine *de novo* any part of the magistrate judge's disposition to which a party has properly objected. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Id.; see also 28 U.S.C. § 636(b)(1). The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions." United States v. One Parcel of Real Property, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

SUBMITTED this 24th day of February, 2017.

T. Lane Wilson
United States Magistrate Judge