## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

LEXINGTON INSURANCE COMPANY;    )
GAVILON FERTILIZER, LLC; CERTAIN    )
UNDERWRITERS AT LLOYD'S OF    )
LONDON; and GAVILON GRAIN, LLC,    )
    )
       Plaintiffs,    )
    )
v.    )    Case No. 14-CV-0610-CVE-TLW
    )
NEWBERN FABRICATING, INC., and    )
BAUCOM CONCRETE CONSTRUCTION,    )
INC.,    )
    )
       Defendants,    )
    )
and    )
    )
NEWBERN FABRICATING, INC.,    )
    )
       Third-Party Plaintiff,    )
    )
v.    )
    )
DOVELAND ENGINEERING CO.,    )
    )
       Third-Party Defendant.    )

## OPINION AND ORDER

Now before the Court is the report and recommendation (Dkt. # 324) of Magistrate Judge

T. Lane Wilson recommending that the Court grant the motion in limine (Dkt. # 141) of plaintiffs

Gavilon Grain, LLC and Gavilon Fertilizer, LLC (Gavilon plaintiffs) to the extent it seeks to bar

evidence at trial that the relevant contract imposed on the Gavilon plaintiffs a duty to inspect and

approve any welds or other methods of attachment used on the rebar. Defendants Newbern

Fabricating, Inc. (Newbern) and Baucom Concrete Construction, Inc. (Baucom) filed an objection

(Dkt. # 327) to the report and recommendation.

**I.**

This action arises from the collapse of a wall of a storage facility at the Tulsa Port of Catoosa. Gavilon Grain owned the building, which Gavilon Fertilizer used to store fertilizer.[1] Dkt. # 142, at 2. In 2004, Gavilon Grain contracted with Newbern, a construction company that builds river terminals and equipment, to build a concrete storage facility. Id. Baucom worked as the subcontractor responsible for the concrete work on the project. Id. The construction contract between Gavilon Grain and Newbern provides that "[Gavilon's] project manager to observe and approve of all steel placement and sizes prior to concrete being poured." Dkt. # 142-7, at 5.

On March 7, 2013, a reinforced concrete wall of the facility collapsed. Id. Plaintiffs Lexington Insurance Company and Lloyd's of London paid a number of claims related to the losses sustained from the wall collapse. Dkt. # 54, 4-5. The Gavilon plaintiffs assert that they both suffered losses from the wall collapse, including damage to the building and associated equipment and loss of profit and use of facilities. Id. at 5. Plaintiffs filed this action against defendants Newbern and Baucom, asserting that the damages were caused by inadequate design and installation of the concrete columns. Id. at 5-9.

Gavilon plaintiffs filed a motion in limine (Dkt. # 141) asking the Court, inter alia,[2] to prevent defendants from "offering, referring to, or attempting to convey to the jury in any manner

---

[1]   In 2011, Gavilon Grain merged with DeBruce Grain, the party that contracted for and oversaw the construction of the storage facility. For clarity's sake, the Court refers to both entities as Gavilon Grain. Also in 2011, Gavilon Fertilizer merged with DeBruce Fertilizer. The Court refers to Gavlion Fertilizer as representative of both entities. See Dkt. # 285, at 3 n.2.

[2]   The Gavilon plaintiffs' motion raised two other issues that were disposed of in an order on June 1, 2016 (Dkt. # 270).

evidence suggesting that the design/build contract between Newbern and [Gavilon] imposed an obligation on [Gavilon] to inspect and/or approve the welds on the fertilizer building's rebar supports." Dkt. # 142, at 8-9. The magistrate judge issued a report and recommendation recommending that the Gavilon plaintiffs' motion be granted as to this issue. Dkt. # 324. Newbern and Baucom object to the magistrate judge's recommendation. Dkt. # 327.

**II.**

The Court may refer any pretrial matter pending before it to a magistrate judge for a report and recommendation. 28 U.S.C. § 636(b)(1)(A). However, the parties may object to the magistrate judge's recommendation within fourteen days of service of the recommendation. Schrader v. Fred A. Ray, M.D., P.C., 296 F.3d 968, 975 (10th Cir. 2002); Vega v. Suthers, 195 F.3d 573, 579 (10th Cir. 1999). The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court may accept, reject, or modify the report and recommendation of the magistrate judge in whole or in part. Fed. R. Civ. P. 72(b).

**III.**

Whether a contract is ambiguous is a matter of law for the Court to determine. K & K Food Serv., Inc. v. S & H, Inc., 3 P.3d 705, 708 (Okla. 2000). "The mere fact the parties disagree or press for a different construction does not make an agreement ambiguous." Pitco Prod. Co. v. Chaparral Energy, Inc., 63 P.3d 541, 545 (Okla. 2003). A "contract is ambiguous only if it is susceptible to two constructions on its face from the standpoint of a reasonably prudent layperson." Haworth v. Jantzen, 172 P.3d 193, 196 (Okla. 2006). When a contract's terms are unambiguous and clear, the language should be accorded its ordinary, plain meaning and enforced so as to carry out the parties'

intentions. Bituminous Cas. Corp. v. Cowen Const., Inc., 55 P.3d 1030, 1033 (Okla. 2002); see also

Okla. Stat. tit. 15, § 160 ("The words of a contract are to be understood in their ordinary and popular

sense."). "Courts 'will not create an ambiguity by using a forced or strained construction, by taking

a provision out of context, or by narrowly focusing on the provision.'" Combs v. Shelter Mut. Ins.

Co., 551 F.3d 991, 997 (10th Cir. 2008) (quoting S. Corr. Sys. v. Union Pub. Sch., 64 P.3d 1083,

1089 (Okla. 2002)). When a contract is unambiguous, its meaning should be gathered by what is

contained within the four corners of the contract without consideration of extrinsic evidence. See

May v. Mid-Century Ins. Co., 151 P.3d 132, 140 (Okla. 2006).

      The cover letter to the contract from Gavilon to Newbern contains twelve "conditions" upon

which the contract was "based on and priced to meet." Dkt. # 327-1, at 1. Number seven states,

"[Gavilon's] project manager to observe and approve of all steel placement and sizes prior to

concrete being poured." Id. at 2. The parties agree that "steel" refers to rebar. Dkt # 327, at 3; Dkt.

# 327-2, at 3.  But Newbern and Baucom argue that the word "placement" is ambiguous and could

be reasonably understood to include the welds on the rebar. Dkt. # 327, at 3. The Gavilon plaintiffs

argue that the contract is unambiguous, and that it does not impose a duty on the Gavilon plaintiffs

to inspect and/or approve the welds. Dkt. # 142, at 8-10.

      As relevant in this case, placement has two commonly understood definitions. First,

placement means physical location, position, or arrangement. Second, placement means the act of

placing. See Merriam-Webster's Collegiate Dictionary 888 (10th ed. 1994). Newbern and Baucom

argue that placement could reasonably include the welds when considered in the context of the

building's construction because without some sort of connection (by ties or welds) the rebar would

fall apart. Dkt. # 327, at 4-5. As Newbern and Baucom describe the construction process, Baucom

4

first built rebar "cages," which involved using eight large diameter vertical bars and affixing "stirrups" (smaller diameter rebar bent into squares) horizontally around the vertical rebar at twelve inch intervals to hold the bars together to form the cages. Id. at 4. The stirrups were connected to the vertical rebar by either ties or welds. Id. at 4-5. Baucom then used a crane to lift the cages into the column locations and to attach them to footings. Id. at 5. Baucom built wooden forms around the cages, filled the forms with concrete, and removed the wooden forms to reveal the completed columns after the concrete dried. Id.

The Court finds that, within the context of the construction project in this case, placement unambiguously means the physical location of the rebar cages and the act of placing (putting in place) the rebar cages. Neither the location of the rebar, nor the act of putting it there, includes how the rebar is connected. Newbern and Baucom argue that the welds are incorporated into the act of placing the rebar, but connecting the rebar by weld or tie is a separate step from placing it in a location. Placement includes whether the rebar cage is in the correct position, whether the cage is of sufficient height, etc. Connection concerns how the rebar is built in order for it to stay together and stay where it has been placed. Placement and connection are separate steps in the construction of the rebar cages. The stirrups are wrapped around the vertical rebar, then they are connected, and then the entire rebar cage is placed in its final location. Whether the bars are held together by ties or welds does not affect their placement. There is no indication in the contract that the parties meant for placement to include how the rebar was connected, and a reasonably prudent layperson would not interpret placement to include welds. Thus, the Court will not strain the plain meaning of the contract to impose an additional duty on the Gavilon plaintiffs, and defendants are barred from

5

arguing during trial that the contract imposed an obligation on the Gavilon plaintiffs to inspect and/or approve the welds of the rebar.

Newbern also argues that it should be able to argue to the jury that its failure to supervise Baucom regarding the welding was reasonable because it believed Gavilon was obligated to oversee and approve the rebar installation, including the welds or ties connecting the rebar. Dkt. # 327, at 7. However, the Court has determined that Newbern's interpretation of the contract is unreasonable. Evidence that Newbern unreasonably interpreted the contract cannot show that Newbern acted in a reasonable manner by relying on its interpretation. It would be nonsensical to find that a party acted reasonably by relying on an unreasonable interpretation of a contract. Therefore, defendants will be barred from seeking to argue or present evidence at trial that the contract imposed on the Gavilon plaintiffs a duty to inspect and/or approve any welds or other methods of attachment of the rebar.

**IT IS THEREFORE ORDERED** that the report and recommendation (Dkt. # 324) is **accepted**, and the Gavilon plaintiff's motion in limine (Dkt. # 141) is **granted in part** as set forth in the report and recommendation (Dkt. # 324).

**DATED** this 7th day of March, 2017.

Claire V. Eagan

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE