UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LEXINGTON INSURANCE COMPANY; GAVILON FERTILIZER, LLC; CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON; and GAVILON GRAIN, LLC, | )<br>)<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Case No. 14-CV-0610-CVE-TLW |
| NEWBERN FABRICATING, INC., and BAUCOM CONCRETE CONSTRUCTION, INC., | )<br>)<br>)<br>) |
| Defendants, | )<br>) |
| and | )<br>) |
| NEWBERN FABRICATING, INC., | )<br>) |
| Third-Party Plaintiff, | )<br>) |
| v. | )<br>) |
| DOVELAND ENGINEERING CO., | )<br>) |
| Third-Party Defendant. | ) |

## OPINION AND ORDER

Now before the Court is the report and recommendation (Dkt # 329) of Magistrate Judge T. Lane Wilson recommending that the Court grant Baucom Concrete Construction, Inc.'s (Baucom) motion to exclude or limit the testimony of Brian Bretz (Dkt. # 147). Lexington Insurance Company (Lexington) filed an objection (Dkt. # 337) to the report and recommendation, and Baucom filed a response (Dkt. # 340).

**I.**

This action arises from the collapse of a wall of a storage facility at the Tulsa Port of Catoosa. Gavilon Grain owned the building, which Gavilon Fertilizer used to store fertilizer.[1] Dkt. # 147, at 2. In 2004, Gavilon Grain contracted with Newbern Fabricating, Inc. (Newbern), a construction company that builds river terminals and equipment, to build a concrete storage facility. Id. Baucom worked as the subcontractor responsible for the concrete work on the project. Id. On March 7, 2013, a concrete wall of the building collapsed, resulting in damage to the wall itself and the master control center (MCC Room), an adjacent room that housed controls, motors, and electronics that controlled the building's conveyer system. Id. Plaintiffs Lexington and Lloyd's of London paid a number of claims related to the losses sustained from the wall collapse. Dkt. # 54, 4-5. Plaintiffs filed this action against defendants Newbern and Baucom, asserting that the damages were caused by inadequate design and installation of the concrete columns. Id. at 5-9.

Lexington hired the firm Cunningham Lindsey to act as insurance adjuster for the Gavilon claim. Dkt. # 185-3, at 7. Cunningham Lindsey hired Bretz soon after the wall collapse to conduct a preliminary inspection of damage and estimate the cost of repairs. Id.; Dkt. # 147-2, at 4. Bretz conducted a field inspection on March 20, 2013. Dkt. # 147-2, at 5. On March 28, 2013, Bretz sent a preliminary inspection report (preliminary report) to Cunningham Lindsey that described the damage and included a "rough order-of-magnitude reserve estimate." Id. at 8. On May 21, 2013,

---

[1] In 2011, Gavilon Grain merged with DeBruce Grain, the party that contracted for and oversaw the construction of the storage facility. For clarity's sake, the Court refers to both entities as Gavilon Grain. Also in 2011, Gavilon Fertilizer merged with DeBruce Fertilizer. The Court refers to Gavlion Fertilizer as representative of both entities. See Dkt. # 285, at 3 n.2. When referencing Gavilon Grain and Gavilon Fertilizer together, the Court uses the Gavilon plaintiffs.

Bretz sent Cunningham Lindsey a "scope of damage repairs and associated cost estimate" (second report), which included a one-page "preliminary estimate summary" (May estimate). Id. at 11-13. At some point between May 21, 2013 and September 25, 2013,[2] another one-page "preliminary estimate summary" was prepared (September estimate), which is identical to the May estimate except for the estimate for "electrical" is approximately $1,000 less. Id. at 17-23. The September estimate also includes a six-page detailed estimate. Id. Both reports and estimates were produced to Baucom during discovery in this case.

Lexington identified Bretz as an expert in repair cost estimation and produced a report of Bretz pursuant to Federal Rule of Civil Procedure 26(a)(2)(B) on September 30, 2015 (expert report). Bretz's expert report includes a paragraph describing his educational background and history with his current employer, a summary of how Bretz was hired and his visit to the site of the collapse in May 2013, and a list of the major repairs needed to restore the building to its pre-loss condition. Dkt. # 147-1, at 1-3. The second-to-last paragraph contains the following sentence: "The above report and associated estimate of damage repairs did not take into account any code upgrade requirements which were unknown at the time of this original report." Id. at 3.

Counsel for Baucom emailed counsel for Lexington to ask about Bretz's expert report in December 2015. Baucom's counsel noted that cost estimates were mentioned in the report but not attached, and no statement of compensation, list of publications, or list of previous cases was included. Dkt. # 147-2, at 3. Lexington's counsel responded with six previously produced documents, stating that Baucom should refer to them for "documentation containing the damage

---

[2]  This estimate was printed on September 25, 2013, but it is unclear exactly when it was prepared. See Dkt. # 147-2, at 17.

amount and analysis." Id. at 1. These documents included Bretz's preliminary report, second report and accompanying May estimate, two copies of the September estimate, and a invoice for Bretz's consulting expenses for April 2013. Id.

Baucom now asks the Court to exclude Bretz's testimony because his expert report failed to meet the requirements of Rule 26(a), and because his cost estimate methodology is unreliable. Dkt. # 147, at 3. Lexington responds that Bretz's expert report complies with Rule 26(a) and his methodology is reliable. Dkt. # 185, at 3.

**II.**

The Court may refer any pretrial matter pending before it to a magistrate judge for a report and recommendation. 28 U.S.C. § 636(b)(1)(A). However, the parties may object to the magistrate judge's recommendation within fourteen days of service of the recommendation. Schrader v. Fred A. Ray, M.D., P.C., 296 F.3d 968, 975 (10th Cir. 2002); Vega v. Suthers, 195 F.3d 573, 579 (10th Cir. 1999). The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court may accept, reject, or modify the report and recommendation of the magistrate judge in whole or in part. Fed. R. Civ. P. 72(b).

**III.**

Baucom asks the Court to exclude Bretz's testimony for two reasons: (1) Bretz's expert report failed to comply with Rule 26(a), and (2) Bretz's methodology is unreliable. The magistrate judge recommended that Bretz's testimony should be excluded because Bretz's expert report did not comply with Rule 26(a), and that failure was not substantially justified or harmless. Dkt. # 329, at 7. Because the magistrate judge recommended Baucom's motion be granted on Baucom's Rule 26(a)

4

argument, the magistrate judge did not address Baucom's argument regarding Bretz's methodology. Id. Lexington objects to the report and recommendation, arguing that Bretz's expert report complied with Rule 26(a) and that any alleged deficiencies were harmless. Dkt. # 337. Baucom responded to Lexington's objection, arguing that Lexington's harmlessness argument is waived because it was not raised before the magistrate judge. Dkt. # 340, at 3-4.

**A.**

The Court first addresses Bacuom's Rule 26(a) argument.[3] Rule 26(a)(2)(B) governs expert reports, and requires each report to contain the following:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>
> (ii) the facts or data considered by the witness in forming them;
>
> (iii) any exhibits that will be used to summarize or support them;
>
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;

---

[3]  Although Baucom and Lexington agree that Bretz was required to issue an expert report under Rule 26(a), there is a reasonable argument to be made that Bretz was not initially required to write an expert report at all. Under Rule 26(a), a witness must provide a written expert report if he is "retained or specially employed to provide expert testimony in the case." Fed. R. Civ. P. 26(a)(2)(B). Bretz was retained prior to litigation to estimate the cost of damages for Lexington and wrote his preliminary report, second report, and both the May and September estimates before litigation began. In similar situations, other courts have determined an insurance adjuster may testify as a fact witness based on his personal observations and experiences. See, e.g., Smith v. Jacobs Eng'g Grp. Inc., No. 4:06-cv-496-WS, 2008 WL 2781149, at *2 (N.D. Fla. Apr. 18, 2008); St. Paul Mercury Ins. Co. v. Capitol Sprinkler Inspection, Inc., No. 05-2115 (CKK), 2007 WL 1589495, at *13 (D.D.C. June 1, 2007). However, "[o]nce a party identifies a potential witness as an expert under Rule 26(a)(2)(A), that witness is subject to being deposed as an expert." Indem. Ins. Co. of N. Am. v. Am. Eurocopter LLC, 227 F.R.D. 421, 425 (M.D.N.C. 2005). Thus, once Lexington designated Bretz as an expert, he was required to issue a written expert report compliant with Rule 26(a)(2)(B).

> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
>
> (vi) a statement of the compensation to paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B). "The purpose of Rule 26(a)(2)'s expert disclosure requirements is to eliminate surprise and provide the opposing party with enough information regarding the expert's opinions and methodology to prepare efficiently for deposition, any pretrial motions and trial." Cook v. Rockwell Int'l Corp., 580 F. Supp. 2d 1071, 1122 (D. Colo. 2006) (citing Sylla-Sawdon v. Uniroyal Goodrich Tire Co., 47 F.3d 277, 284 (8th Cir. 1995); Nguyen v. IBP, Inc., 162 F.R.D. 675, 682 (D. Kan. 1995)).

The original expert report of Bretz supplied to Baucom does not comply with Rule 26(a). It does not include all of Bretz's opinions or exhibits because the cost estimates are not included. The description of Bretz's qualifications is deficient because it does not include a list of publications authored in the previous 10 years. Additionally, a list of cases for which Bretz was a witness in the previous 4 years and a statement of compensation are entirely missing. Bretz's expert report is clearly insufficient under Rule 26(a), and the fact that the cost estimates were part of a prior document production does not cure the expert report's deficiencies. The expert report requirements of Rule 26(a) are in place so that the parties have a clear statement of the qualifications, opinions, and methodology of each expert the other party plans to call to testify at trial. Requiring a party to piece together an expert's report from among the multitude of documents produced during litigation is antithetical to the purpose of Rule 26(a). This is especially true in this case where several of the documents later proffered by Lexington as part of Bretz's report were not readily identifiable as being authored by Bretz. See Dkt. # 147-2, at 17-56 (cost estimates that neither bear Bretz's name nor are attached to such documents). Thus, Bretz's expert report fails to comply with Rule 26(a).

Rule 37 addresses failures to comply with discovery rules. Under Rule 37(c)(1):

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1). "The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court." Jacobsen v. Deseret Book Co., 287 F.3d 936, 953 (10th Cir. 2002) (quoting Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co., 170 F.3d 985, 993 (10th Cir. 1999)). A district court need not make explicit findings regarding the harmlessness or substantial justification of a Rule 26(a) violation. Woodworker's Supply, 170 F.3d at 993. However, the district court's discretion should be guided by the following factors: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness."[4] Id.

Baucom asserts that it was prejudiced because it had to use Bretz's deposition "to mine out the information from which an opinion could be determined." Dkt. # 147, at 6. The Court agrees that

---

[4] Baucom argues that Lexington waived the argument that its Rule 26(a) violation was harmless because it failed to make this argument before the magistrate judge. Dkt. # 340, at 4. The report and recommendation stated that Lexington had the burden to establish that its Rule 26(a) violation was harmless. Dkt. # 329, at 6-7. However, this standard was based on dicta from a few district courts. See Murphy v. Spring, 58 F. Supp. 3d 1241, 1274 (N.D. Okla. 2014) (citing Nguyen v. IBP, Inc., 162 F.R.D. 675, 680 (D. Kan. 1995)). The law in the Tenth Circuit is that the district court should exercise its discretion based on the factors described in Woodworker's Supply. See, e.g., Guerrero v. Meadows, 646 F. App'x 597, 599 (10th Cir. 2016); Eugene S. v. Horizon Blue Cross Blue Shield of N.J., 663 F.3d 1124, 1129-30 (10th Cir. 2011); Martinez v. Target Corp., 384 F. App'x 840, 847 (10th Cir. 2010); Jacobsen, 287 F.3d at 953. As there was no burden on Lexington to establish that its Rule 26(a) violation was harmless, waiver is inapplicable. Additionally, the Court has considered only the evidence before the magistrate judge in considering Baucom's motion.

Baucom was prejudiced by Bretz's incomplete report. Baucom had less time to prepare for Bretz's deposition that it would otherwise because it initially received an expert report without Bretz's cost estimates. Additionally, going into Bretz's deposition, Baucom was still unclear whether the May estimate or September estimate constituted Bretz's official opinion. However, Baucom's opinion of the degree of prejudice it has suffered is overstated. When Baucom's counsel pointed out the problems with Bretz's expert report, counsel for Lexington replied by sending Baucom six documents, including Bretz's cost estimates and an invoice showing Bretz's compensation for his work on the case. Lexington also asserts that its lawyers told Baucom during a phone conference that Bretz had no publications within the last 10 years and had not testified in any other cases in the previous 4 years. Dkt. # 337, at 3. Baucom asked for, and received, the supplemental information in mid-December 2015. Dkt. # 147-2, at 1-2. Bretz's deposition did not occur until March 2016. Although Baucom did not have the amount of time it would have had if Lexington had provided it with a complete report at the end of September 2015, Baucom had approximately 2-and-a-half months to prepare for Bretz's deposition after receiving the 6-document, 54-page supplement to Bretz's expert report. Moreover, the uncertainty surrounding which estimate constituted Bretz's opinion concerned only one number, the electrical estimate, and was less than $1,000 different. Thus, Baucom was prejudiced, but the degree of prejudice it suffered was minimal.

Moreover, Lexington was largely able to cure Baucom's prejudice by promptly supplementing Bretz's expert report. As discussed above, Lexington supplemented Bretz's expert report with the missing required information months before Bretz's deposition. There was some confusion at Bretz's deposition about the difference in the electrical amount between the May and

September estimates.[5] See Dkt. # 185-3, at 13-14. It appears from the deposition transcript that Bretz did not remember that the electrical estimate changed after the May estimate, so both Bretz and his lawyer initially indicated that the May estimate was Bretz's opinion. See id. at 8. Once the discrepancy was pointed out to Bretz, he testified that he must have received updated information and revised the electrical estimate after the May estimate. Id. at 14. The deposition testimony makes clear that the September estimate is Bretz's opinion. Id. ("Q: So for the purposes of this lawsuit, which one of these am I supposed to use? A: I would say the [September estimate] is the most recent and that would be the one."). Thus, Lexington cured most of Baucom's prejudice by supplementing Bretz's expert report in December 2015, and any lingering uncertainty about the content of Bretz's opinion was dispelled in Bretz's deposition. Moreover, as to the final two factors the Court should consider under Woodworker's Supply, the Court sees no evidence, and Baucom has made no argument, that Bretz's testimony would disrupt the trial or that Lexington acted in bad faith.

The magistrate judge recommends that Bretz be barred from testifying at trial under Rule 37. However, the Tenth Circuit has stated that total exclusion of an expert's testimony under Rule 37 is an "extreme sanction." Gillum v. United States, 39 F. App'x 267, 270 (10th Cir. 2009).[6] Similar to this case, Gillum involved an expert report of "piecemeal disclosures [that] ignored the policies behind Rule 26(a)(2)." Id. The Tenth Circuit noted that "it did not condone the provision of inadequate expert reports and begrudging snippets of information" and "caution[ed] that parties who behave in this manner act to their peril." Id. Nevertheless, the Tenth Circuit held that total exclusion

---

[5]   The reliability of Bretz's electrical estimate methodology is addressed in section III.B.

[6]   This and all other unpublished opinions are not precedential, but they may be cited for their persuasive value. See Fed. R. App. 32.1; 10th Cir. R. 32.1.

9

was "too extreme a sanction." Id. Similarly here, Lexington has engaged in a risky practice by clearly failing to comply with Rule 26(a), but, considering the Woodworker's Supply factors, exclusion of Bretz's testimony is too drastic in this case. Lexington acted poorly, but once the problem was brought to its attention, the deficiencies in Bretz's expert report were largely cured. Excluding a witness from trial on the basis of a quickly remedied mistake is too extreme. Additionally, Baucom has suffered very little prejudice and will not suffer any going forward from this issue because it now has a complete expert report from Bretz. Therefore, the Court will not exclude Bretz's testimony under Rule 37 because the deficiencies in Bretz's expert report were harmless.

### B.

The Court now considers Baucom's arguments regarding the reliability of Bretz's methodology. In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), the Supreme Court held that district courts must initially assess the admissibility of "scientific" expert testimony under Rule 702 of the Federal Rules of Evidence. The Supreme Court extended the gatekeeper role of federal district courts to all expert testimony in Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999). In Bitler v. A.O. Smith Corp., 400 F.3d 1227 (10th Cir. 2005), the Tenth Circuit discussed the role of district courts in considering a Daubert challenge to the admissibility of expert testimony. First, the court should make a preliminary finding that the expert is qualified to testify. Id. at 1232-33. Next, the proponent of expert testimony must establish that the expert used reliable methods to reach his conclusion and that the expert's opinion is based on a reliable factual basis. Id. at 1233. The Tenth Circuit cited four factors that district courts should apply to make a reliability determination:

> (1) whether a theory has been or can be tested or falsified; (2) whether the theory or technique has been subject to peer review and publication; (3) whether there are known or potential rates of error with regard to specific techniques; and (4) whether the theory or approach has "general acceptance."

Id. at 1233 (citing Daubert, 509 U.S. at 593-94). The Tenth Circuit was clear that "a trial court's focus generally should not be upon the precise conclusions reached by the expert, but on the methodology employed in reaching those conclusions." Id. In other cases, the Tenth Circuit has emphasized that any analytical gap in an expert's methodology can be a sufficient basis to exclude expert testimony under Daubert. Trucks Ins. Exchange v. MagneTek, Inc., 360 F.3d 1206, 1212-13 (10th Cir. 2004); Goebel v. Denver & Rio Grande Western R. Co., 346 F.3d 987, 992 (10th Cir. 2003). Under Daubert, "'any step that renders the analysis unreliable . . . renders the expert's testimony inadmissible. This is true whether the step completely changes a reliable methodology or merely misapplies that methodology.'" Mitchell v. Gencorp Inc., 165 F.3d 778, 783 (10th Cir. 1999) (citing In re Paoli R.R. Yard PCB Litigation, 35 F.3d 717, 745 (3d Cir. 1994)).

As a preliminary matter, the Court finds that Bretz is qualified as an expert on repair cost estimation. He has a bachelor's degree in architectural engineering and decades of experience estimating repair costs. Dkt. # 147-1, at 1. Additionally, Baucom does not appear to object to Bretz's qualifications to testify as an expert on repair cost estimations. See Dkt. # 147, at 6. Baucom instead objects to the methodology Bretz employed in formulating his estimates.

Baucom first objects to Bretz's methodology for calculating the electrical estimate. Id. at 8-11. The electrical estimate is the amount estimated to repair the MCC Room. See Dkt. # 147-2, at 22-23. Bretz calculated the electrical estimate by starting with the actual cost to originally build the MCC Room and then adjusting for inflation over the eight years between the original build and the wall collapse. Dkt. # 185-3, at 18. Baucom argues that there was no need to estimate the cost

because by the time Bretz's expert report was issued, the MCC Room had been rebuilt. Dkt. # 147, at 9. The Court agrees with Baucom. Damages may be sustained by reasonably certain estimates based on tangible facts from which actual damages may be logically and legally shown or inferred. Groendyke Transp., Inc. v. Merchant, 380 P.2d 682, 684-85 (Okla. 1962) (quoting Bokoshe Smokeless Coal Co. v. Bray, 155 P. 226 (Okla. 1916)); see also Florafax Int'l, Inc. v. GTE Mkt. Res., Inc., 933 P.2d 282, 296 (Okla. 1997) ("It is sufficient if the evidence shows the extent of damage by just and reasonable inference."). However, if the MCC Room had actually been rebuilt, an estimate of the cost to rebuild the MCC Room is unacceptably unreliable to be used in the damages calculation in this case. There is no need to estimate the cost to rebuild the MCC Room, because the Gavilon plaintiffs have already rebuilt it. The actual cost to rebuild the MCC Room will necessarily be more reliable than any estimate.

Further, there are issues with the reliability of Bretz's electrical estimation independent of the rebuilt MCC Room. First, Bretz made up the inflation rate he used based on what he "felt" inflation was from 2005 to 2013, without consulting any sources to determine the actual inflation rate. Dkt. # 185-3, at 18. Second, when asked about discrepancies between the May and September electrical estimates, Bretz could not articulate a reason for the difference or explain what factors may have affected the revised number. Id. at 14. For the reasons above, the Court finds that Bretz's MCC Room/electrical estimate is unreliable, and Bretz may not testify at trial on this issue.

Second, Baucom objects to Bretz's methodology for calculating sales tax and permit costs. Dkt. # 147, at 11-12. When asked about how he calculated sales tax, Bretz testified that he looked up the sales tax for Catoosa and applied it to the estimated materials. Dkt. # 185-3, at 15. Baucom argues that Bretz did not know whether he applied the rate for Tulsa County or Rogers County, but

Bretz clearly stated that he looked up where Catoosa was and applied that rate. Bretz's failure to recall years later the name of the county in which Catoosa is located is not evidence that he applied the wrong rate. Bretz also testified that he based the permit costs on information from the website for the City of Catoosa. Id. Baucom does not explain why it believes the city's website is an unreliable source of information, and the Court has no reason to believe that it is unreliable. Thus, Baucom's motion will be denied as to Bretz's sales tax and permit estimations.

Third, Baucom argues that Bretz's estimate contains amounts for the repair of foundation walls that do not exist. Dkt. # 147, at 12. Bretz testified that his estimation of the foundation walls was based on the structural report of David Hanks, Ph. D., P.E., the Gavilon plaintiffs' structural engineering expert. Dkt. # 185-3, at 16. Baucom offers no evidence that the building did not contain foundation walls. Additionally, the Court has already determined that Dr. Hanks is qualified as an expert in structural engineering and that his opinion is based on sound methodology. Dkt. # 326. Therefore, the Court has no reason to exclude Bretz's estimate of the foundation walls at this time.

Fourth, Baucom argues that Bretz's estimate of labor costs is unreliable because Bretz based his estimate on information from contractors in Oklahoma City, which is over a hundred miles from Catoosa. Dkt. # 147, at 13. While labor costs in Oklahoma City may differ from those in Catoosa, the Court cannot say that renders Bretz's estimate unreliable. Bretz investigated labor costs in Oklahoma by calling contractors in Oklahoma City. That Bretz could have made a more accurate estimate by calling contractors closer to Catoosa goes to the weight of Bretz's opinion and is an issue best dealt with on cross-examination.

Finally, Baucom argues that Bretz included estimates for items that were not damaged in the wall collapse. Dkt. # 147, at 14. Specifically, Baucom argues that estimates for siding, a conveyor

system, and roofing should not have been included in Bretz's report. Baucom presents no evidence that these items were either undamaged or were damaged before the wall collapse. Bretz based his opinion on his own observations of the building, and he is qualified as an expert in repair cost estimation. Baucom's conclusory assertions that these items were not damaged in the wall collapse are not sufficient to bar Bretz's testimony on these items, but are appropriately raised in cross-examination.

**IT IS THEREFORE ORDERED** that the report and recommendation (Dkt. # 329) is **rejected**, and Baucom's motion to exclude or limit the testimony of Brian Bretz (Dkt. # 147) is **granted in part and denied in part**: it is granted as to Bretz's testimony regarding the MCC Room/electrical cost estimates; it is denied as to the remainder of Baucom's motion.

**DATED** this 14th day of March, 2017.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE